FILED
MAR 21 PM 2:01
U.S. DISTRICT COURT
N D OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DAVID KENNETH LEE CARROLL,     }
                               }
    Plaintiff,                 }
                               }    CIVIL ACTION NO.
v.                             }
                               }    CV-98-AR-2123-M
CITY OF GADSDEN, et al.,       }
                               }
    Defendants.                }

ENTERED
MAR 21 2000

### MEMORANDUM OPINION

Before the court is the motion of plaintiff David Kenneth Lee Carroll ("Carroll"), for reconsideration of this court's grant of summary judgment in favor of the defendants in the above-styled action. Carroll's motion is due to be granted in part. On December 14, 1998, this court issued an order and supporting memorandum opinion in which the court dismissed with prejudice Counts I-VI and Count XIII of the complaint. That order dismissed the action "insofar as it contains claims against the Gadsden Police Department and claims asserted against the City." The language of that order left open a category of claims against the arresting officers in their individual capacities. The court acknowledges that if it had more carefully proof-read its December 14, 1998 order it would have noticed this limited number of



remaining potential claims. On the other hand, the court points out that only a very small fraction of Carroll's brief in response to defendants' motion for summary judgment addressed these few remaining claims. Instead, Carroll focused almost entirely on such matters as the alleged preferential treatment of James Farlow, the alleged vicarious liability of the City of Gadsden for the acts of its employees, the alleged direct liability of the City of Gadsden for its failure to train, the alleged unconstitutionality of the arrest because Carroll's gun permit was four blocks away, (apparently arguing that the officers should have driven Carroll there to get it), and a variety of other state and federal claims. Many of these claims had clearly been dismissed with prejudice by the order of December 14, 1998. The court must have been distracted by this approach by Carroll. In any event, Carroll earlier provided little help in locating the potentially meritorious claims he now points to. Nonetheless, the court regrets the fact that it missed the few potential remaining claims legitimately left open by its December 14, 1998 order.

### Discussion

<u>Excessive force in violation of the Fourth Amendment</u>.

Carroll brings a claim under 42 U.S.C. § 1983, alleging that the arresting officers used excessive force during Carroll's arrest. To the extent, if any, that this claim is brought against Officer Tim Farlow ("Farlow"), summary judgment is due to be

granted in favor of Farlow because Farlow was not in close proximity to the arrest of Carroll when it occurred. With respect to Officer Tim Johnson[1] ("Johnson"), the court finds that Carroll has raised genuine issues of fact as to whether Johnson's use of force was excessive and in violation of the Fourth Amendment.

The Eleventh Circuit has held that "police use of excessive force is a constitutional violation." *McKinney v. DeKalb County*, 997 F.2d 1440, 1443 (11th Cir. 1993). Because police use of force has been defined by the Supreme Court as a type of "seizure" under the Fourth Amendment, allegations of excessive force are to be analyzed under the prohibition against unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989). The *Graham* Court explained that the relevant inquiry is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation. *Id.* at 397, 109 S.Ct. at 1872. The Court went on to explain further that

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of

---

[1] This officer has been variously referred to as "Tim" Johnson and "Bobby" Johnson. The court has found this to be distracting and unhelpful, especially since the other defendant officer's name is "Tim" as well. The court will assume that Officer Johnson's first name is, in fact, "Tim," because defendants refer to him as "Tim" in their brief, and defendants would presumably be in a position to know.

3

> reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

*Id.* at 396-97, 109 S.Ct. at 1872 (internal citations omitted).

Here, accepting Carroll's version of the facts as true, as the court must, the court finds that Carroll has raised genuine issues of material fact on the question whether the force used by Johnson was excessive under the circumstances. Carroll explained to Johnson just as Johnson was about to cuff him that he had had shoulder surgery. Carroll had a clearly visible scar on his shoulder, and he had no shirt on. Carroll pleaded with Johnson to cuff him in front. Witnesses observed that Johnson forced Carroll's hands up his back all the way to his neck, in a manner that is used as a form of "pain compliance," ordinarily applied to an uncooperative individual who is resisting arrest. All parties agree that Carroll had been entirely cooperative and was not resisting arrest in any way.

This court finds, if these events occurred as Carroll claims, that Carroll has raised genuine issues of fact with respect to whether Johnson's actions were unreasonable under the circumstances, thereby constituting excessive force in violation of the Fourth Amendment. The court acknowledges this possibility notwithstanding the fact that officers are often forced to make split-second judgments in tense situations.

### Qualified Immunity

Johnson claims that even if the events happened as described, he is entitled to qualified immunity because Carroll has not shown that when Johnson acted, the law was developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in Johnson's place, that what he is doing violated clearly established law. Although Johnson acknowledges that the use of excessive force by a law enforcement officer is a constitutional violation, he argues that this general proposition does not suffice for this court's analysis of whether qualified immunity is applicable.

This court agrees with Johnson that the general rule in the Eleventh Circuit is the following:

> General rules, propositions, or abstractions . . . do not determine qualified immunity. Instead, the circumstances that confronted the government actor must have been "materially similar" to prior precedent to constitute clearly established law because public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases. For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

*Wood v. City of Lakeland*, 2000 WL 177198, 3 (11th Cir.(Fla.)) (internal citations and quotations omitted).

While there can be no doubt that the standard set forth above is the general rule, stating this rule does not end the inquiry in the Eleventh Circuit with respect to claims of excessive force. In

5

a small category of cases, where every reasonable government actor would understand that his use of force was excessive, qualified immunity is surrendered, even in the absence of case law based on materially similar facts. *See, e.g., Ortega v. Schramm*, 922 F. 2d 684, 695-96 (11th Cir. 1991); *Sheth v. Webster,* 145 F.3d 1231, 1238 (11th Cir. 1998); *Thornton v. City of Macon*, 132 F.3d 1395, 1399-1400 (11th Cir. 1998); *Nolin v. Town of Springville*, 45 F.Supp.2d 894, 907, (N.D. Ala. 1999); *Sims v. Glover*, 1999 WL 1426143, 14-15 (M.D. Ala.). The following quotation from a recent case from the Middle District of Alabama summarizes Eleventh Circuit law on this matter:

> Because Sims has sufficiently alleged the deprivation of her constitutional right to be free from the use of excessive force, the court now turns to whether this right was clearly established. It is clearly established that the use of excessive force in effectuating a seizure constitutes a violation of the Fourth Amendment. *Graham*, 490 U.S. at 394, 109 S.Ct. 1865. As explained in *Post v. City of Ft. Lauderdale*, 7 F.3d 1552 (11th Cir.1993), "[w]hether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " Id. at 1559 (quoting *Graham*, 490 U.S. at 394, 109 S.Ct. 1865). Because of these balancing of factors, "Fourth Amendment jurisprudence has staked no bright line for identifying force as excessive." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.1997). "Therefore, unless a controlling and factually similar case declares the official's conduct unconstitutional, an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official,

notwithstanding the lack of caselaw." *Id*. *Sims v. Glover*, 1999 WL 1426143, 14-15 (M.D.Ala.).

Here, applying one at a time the *Graham* "excessive force" factors, the court first finds that the "severity" of the crime in this case was minimal. Carrying a pistol without a licence is not a crime of violence to person or property, and Carroll informed Johnson that his permit was at home four blocks away. Next, since Carroll was entirely cooperative, he clearly did not pose an "immediate threat" to Johnson or anyone else. Carroll admittedly brought weapons with him to the scene, but the weapons were not in close proximity during the arrest. Furthermore, Carroll was dressed in thin shorts without a shirt and was thus very unlikely to have been carrying a hidden weapon. Finally, Carroll's cooperation at the time of the arrest indicates that he was not "attempting to flee." From these facts it appears that there was no justification for using any force at all during the arrest. Moreover, the use of behind-the-back "pain compliance" techniques when cuffing Carroll was especially inappropriate here because Carroll informed Johnson in the clearest terms that he had an injured shoulder; the scar on the shoulder was plainly visible on the shirtless Carroll; and Carroll pleaded with Johnson loudly and clearly to please cuff him in front because of his injured shoulder. Johnson acknowledges that it is within department policy to seek an exception to the usual behind-the-back cuffing technique

when an arrestee has an injury.

Based on the above, the court will not grant summary judgment in favor of Johnson based on qualified immunity at this point. If, at a later point in the proceedings, a jury discredits Carroll's version of the facts, a finding of qualified immunity in favor of Johnson is entirely possible. The court realizes that the purpose of qualified immunity is to avoid the need for litigation in the first place, and that the benefits of qualified immunity are largely eliminated when immunity is granted after a jury makes fact determinations. Nonetheless, this result is unavoidable when a plaintiff raises genuine issues of fact on the question of excessive force.

### State law claims of assault and battery; discretionary function immunity

The court will not discuss the state law questions extensively because the issues are largely the same as those discussed above. A brief quote from the Alabama Supreme Court's opinion in *Wright v. Wynn* will suffice to support this court's conclusion that Carroll's assault and battery claim will not be defeated by Johnson's assertion of Alabama state law discretionary function immunity:

> Because the record indicates that a fact question was presented as to whether Wright used excessive and illegal force in arresting Wynn, we cannot agree that the doctrine of discretionary function immunity precludes Wynn's assault and battery claim. A mistake in identifying a suspect is one thing; abusing a suspect who has been detained and subdued is quite another. Simply put, a state trooper has a legal obligation to conduct

>himself in a professional manner and within the bounds of
>the law in making an arrest.

*Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996).

### Conclusion

Based on the foregoing, this court will partly grant Carroll's motion to reconsider this court's order granting summary judgment to defendants. Previously, this court had dismissed all claims with prejudice. To the extent that Carroll seeks to reinstate federal § 1983 claims of excessive force against Johnson, and to the extent that Carroll seeks to reinstate assault and battery claims against Johnson under state law, Carroll's motion to reconsider is due to be granted. An appropriate order will be separately entered.

DONE this 21st day of March, 2000.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

9